UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION


VERNON E. MILLER,                    )
                                     )
            Petitioner,              )
                                     )
    v.                               )        Case No. 1:22-CV-87-SNLJ
                                     )
BILL STANGE,                         )
                                     )
            Respondent.              )


**MEMORANDUM AND ORDER**

This case is before the Court on a petition under 28 U.S.C. § 2254 for a writ of habeas corpus.  [Doc. 1.]  Petitioner Vernon Miller is an inmate at the Southeast Correctional Center in Charleston, Missouri.  A jury found him guilty of forcible rape, second-degree statutory rape, and second-degree statutory sodomy.  For these convictions, the state trial court sentenced him to twenty-five years, seven years, and seven years imprisonment, respectively.  Respondent Warden Bill Stange and the Missouri Attorney General were ordered to show cause as to why the petition should not be granted [Doc. 15], and they have since filed their response.  [Doc. 32.]  Petitioner then filed a "traverse." [Doc. 35.]  For the reasons stated in this opinion, the petitioner will be denied.


I.    **Petitioner's Supplemental Petition**

Petitioner filed his traverse in January 2023, which is the last memorandum he could file without seeking leave of Court.  E.D.Mo. L.R. 4.01(C)  Four months later, he filed

1

another pro se motion for summary judgment, and insisting he has "many unfiled claims" to raise, including a claim for "prosecutorial misconduct."  [Doc. 41 at 4.]  Months later in July, 2023, petitioner filed a self-styled "addendum" to his original section 2254 petition, seeking to add new claims of prosecutorial misconduct, that his judicial proceedings were in a "quasi-judicial" jurisdiction, and that his initial arrest warrant was constitutionally deficient.  [Doc. 43.]  These claims were not raised in his original 76-page petition, nor were they numbered among his original forty-two claims.  *See* [Doc. 1-1.]

Petitioner did not seek leave of this Court to file his amended petition.  To whatever extent petitioner is moving to file an amended complaint and to add new claims, that motion is denied.  Months have passed and briefing has concluded.  None of these new claims were raised in the original petition or at any other stage of petitioner's defense.  Rather than draw out proceedings any longer or require further briefing on petitioner's imagined and novel claims, the Court will instead honor petitioner's frequent requests to "proceed expedi[t]iously," [Doc. 41], to a decision.  Petitioner's request to file his supplemental petition is denied, and the Court will not consider any of the claims raised therein.

## II.   Procedural History

A jury convicted petitioner of one count of forcible rape, § 566.030 RSMo (2000); one count of statutory sodomy in the second degree, § 566.064 RSMo (2000); and one count of statutory rape in the second degree, § 566.034 RSMo (2000).  Viewing the facts in the light most favorable to the verdict, *United States v. Peterson*, 223 F.3d 756, 759 (8th Cir. 2000), the following evidence was given at trial.

Petitioner was the boyfriend of S.L., an adult woman.  [Doc. 38-1 at 169.]  Petitioner and S.L. lived together on his property in a rural part of Dent County, Missouri.  Living with them were S.L.'s children from previous relationships, her three sons and her two minor daughters, M.L. and A.A.  *Id.* at 140–42, 167–68.  The family initially lived in a fifth-wheel camper on petitioner's property, but they later they moved into a single-wide mobile home with petitioner. *Id.* at 143–44.

Petitioner began to touch M.L. inappropriately when she was seven or eight years old.  [Doc. 38-1 at 145–46.]  He gave her extended hugs, French-kissed her, and touched her breast and vaginal areas.  *Id.* at 146.  Petitioner told M.L. about a year before she graduated from eighth grade that he would take her virginity on her eighth-grade graduation night.  *Id.* at 148.  When that night came, petitioner did nothing to M.L. because she told him that she did not want it to happen.  *Id.* at 149.  The next morning, though, petitioner entered M.L.'s room and asked her to come to his room.  *Id.* at 150.  He told M.L. she was going to be his and that they would be married.  *Id.* at 150.  He then took M.L. to a barn and forced her to have intercourse with him.  *Id.* at 151–52.

Petitioner fondled A.A.'s vagina when she was ten or eleven years old.  [Doc. 38-1 at 177.]  He approached A.A. the night before her eighth-grade graduation, and he said that he needed to explain her body to her and show her the ways of the world.  *Id.* at 172, 176–77.  The night after the graduation, petitioner called A.A. into his bedroom and said that he wanted to give her a gift she would never forget.  *Id.* at 173, 176.  Petitioner undressed A.A., who tried to resist.  *Id.* at 173–74.  He pinned her hands above her head and forced her to have intercourse with him.  *Id.* at 174–76.  About a year later, A.A. was not feeling

good and was resting in her bedroom. *Id.* at 178–79. Petitioner came in and told her that sex would make her feel better. *Id.* at 178. He put his hands in her pants and rubbed her vagina. *Id.*

A hotline call was made to the Missouri Children's Services Division, and an investigator went to petitioner's mobile home, accompanied by a Dent County sheriff's deputy. [Doc. 1-1 at 188–89.] When they first spoke to petitioner, he denied the allegations. *Id.* at 194, 207; [Doc. 38-2 at 78.] He called the Children's Division investigator the next day and threatened to throw away any evidence he had. [Doc. 38-1 at 208.] Petitioner later refused to cooperate with the Children's Division, and he kicked a Division employee off of his property. [Doc. 38-2 at 11–13.] He later tried to convince the sheriff's deputy to search a dumpster that he knew contained dead animals and maggots. *Id.* at 94–95. Sometimes later, M.L. received a note, which she believed was written by petitioner, as part of an attempt to persuade her not to cooperate with authorities. *Id.* at 63–64.

Petitioner's trailer was searched after he was arrested. Investigators found a tube of cinnamon lubricant. [Doc. 38-2 at 85, 88.] Both M.L. and A.A. testified at trial that petitioner owned a bottle of cinnamon lubricant and that he would use the lubricant to have intercourse with them. [Doc. 38-1 at 160–61, 177.] Investigators also found lingerie in petitioner's bedroom that was too small for S.L. [Doc. 38-2 at 92.] A laptop computer was seized that contained artifacts of the letter given to M.L., indicating that the letter was printed from the laptop but not saved on it. *Id.* at 96–97. The entire document was contained on a CD found in the laptop's bag. *Id.* at 98.

4

Petitioner was questioned by the sheriff's department, and he said that he had only engaged in "heavy petting" with M.L. when she was seventeen. [Doc. 38-2 at 111.] He denied having sexual intercourse with either M.L. or A.A. *Id.* at 112. Petitioner testified at his trial, and he denied abusing either victim. *Id.* at 206. The jury convicted him of all three counts: forcible rape against A.A. (Count I), statutory sodomy in the second degree against A.A. (Count II), and statutory rape in the second degree against M.L. (Count III) [Doc. 38-3 at 62; Doc. 38-4 at 8; Doc. 38-6 at 92, 94, 96, 104–06.] The Missouri court of appeals summarized the jury's deliberations:

> After deliberating some six and one-half hours, the jury sent the court a note stating that it had reached two verdicts, but was at an impasse on the third charge. The court brought the jury in and inquired of the foreperson, who opined that the impasse was worthy of continued deliberation. The court read and accepted the verdicts reached (Counts II & III, both guilty), then adjourned for the evening so jurors could continue Count I deliberations the next morning.
>
> The next day, before deliberations resumed, Defendant moved for a mistrial on unresolved Count I only, but expressly not on the other two counts where verdicts had been reached and accepted. The court denied the mistrial request. Jurors resumed deliberations and reached a guilty verdict on Count I about 80 minutes later. The jury was polled and the verdicts were unanimous on all three counts.

*State v. Miller*, 531 S.W.3d 91, 93 (Mo. App. S.D. 2017) ("*Miller Direct Appeal*"). Petitioner did not object or complain at trial about the judge's decision to accept the early verdicts. *Id.* The trial court accepted the recommended twenty-five years imprisonment for Count I, seven years imprisonment for Count II, and seven years imprisonment for Count III. [Doc. 38-4 at 50–51; Doc. 38-6 at 112–14.]

Petitioner directly appealed the conviction on three points of error.  [Doc. 38-7.]
The first point of error was the trial court's "early" acceptance of the Count II and III
verdicts.  *Miller Direct Appeal*, 531 S.W.3d at 93.  Though petitioner raised this point in
his motion for a new trial, he had not objected to the trial court's early acceptance during
trial, so his claim was reviewed for plain error.  The court of appeals found no plain error.
*Id.*  Petitioner's second point of error was the trial court's denial of his mistrial request.
The court of appeals reviewed this under an abuse of discretion standard, *id.* (citing *State
v. Norris*, 237 S.W.3d 640, 644 (Mo. App. S.D. 2007)), and concluded that the trial court
did not commit error, nor was there any prejudice against petitioner.  *Id.* at 93–94.

Petitioner's final alleged point of error was the trial court's decision to send exhibits
to the jury—after the jury requested a particular exhibit—and sending *all* the admitted
exhibits (more than what the jury asked for) *except* for state's Exhibit 5, an audio recording
of Miller's police interview.  *Id.* at 94.  Miller argued that the jury also should have been
given Exhibit 5.  *Id.*  The court of appeals found no error, reasoning that defense counsel
agreed that the audio recording should not have gone to the jury, and finding no abuse of
discretion.  *Id.* (citing *State v. Turin*, 723 S.W.2d 461, 464 (Mo. App. E.D. 1986)).  The
court of appeals then affirmed the conviction and sentence.  [Doc. 38-14.]

Petitioner sought post-conviction relief under Missouri Supreme Court Rule 29.15
[Doc. 38-8 at 6; Doc. 38-10.]  After amendment of the motion [Doc. 38-8 at 7–8; Doc. 38-
11.] and an evidentiary hearing [Doc. 38-9], the motion court granted post-conviction relief
[Doc. 38-8 at 43.]  The state appealed [Doc. 38-15.]  The court of appeals reversed the

circuit court judgment and ordered the denial of post-conviction relief. *Miller v. State*, 636 S.W.3d 197, 199–200 (Mo. App. S.D. 2021) ("*Miller Post-conviction*").

## III.   Review

Petitioner brings his petition for habeas relief under 28 U.S.C. § 2254, which states:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

> (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i) there is an absence of available State corrective process; or

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

Section 2254 gives deference to the decision of state courts, stating:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Furthermore, section 2254(i) explicitly states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

Petitioner now brings four "grounds" for habeas relief—(1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, (3) errors of the trial court; and (4) errors of the post-conviction appellate court.  Each "ground" contains multiple claims of error.  Altogether, he brings forty-two (42) individual claims for relief.  [Doc. 1-1] (attached list of all claims).  Most of petitioner's forty-two claims are procedurally defaulted.  This Court has previously explained the process of determining whether a claim is defaulted and whether that default should be excused:

> **Exhaustion.**   Before presenting a claim in a federal habeas petition, a petitioner must first properly exhaust state remedies.  28 U.S.C. § 2254(b)(1).  To exhaust state remedies, a petitioner must fairly present the "substance" of the claim to the state courts.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  The petitioner's federal court claim must assert the same factual and legal bases as the state court claim.  *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994).  To exhaust a claim, the petitioner must raise the claim on direct appeal or in state post-conviction proceedings, including on post-conviction appeal.  *See id.*

*Johnson v. Steele*, No. 4:13-CV-2046-SNLJ, 2018 WL 3008307, at *4 (E.D. Mo. Feb. 28, 2018), *aff'd* 999 F.3d 584 (8th Cir. 2021).  State procedural default provides an independent and adequate state ground that bars federal habeas corpus review of the defaulted claim. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).  Likewise, a claim is also procedurally defaulted if the petitioner actually raised the claim in state court, and the state court disposed of the claim based on a state law procedural bar.  *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).

This Court has previously explained the circumstances of when a federal habeas petitioner fails to exhaust state claims under Missouri law:

> **Missouri procedural law—direct appeal.** If a claim is preserved in the trial court, Missouri appellate courts determine whether an error occurred and, if so, whether the error was prejudicial. *State v. Johnson*, 207 S.W.3d 24, 34 (Mo. banc 2006). If a claim is not preserved in the trial court, Missouri appellate courts may still review the claim under the plain-error standard. *Id.* But these unpreserved claims are defaulted for federal habeas purposes. *Clark v. Bertsch*, 780 F.3d 873, 876 (8th Cir. 2015). Thus, even if the appellate court reviewed an unpreserved claim, it is still defaulted for federal habeas purposes. *Id.*
>
> **Missouri procedural law—collateral post-conviction proceedings.** Under Missouri law, claims of trial court error that could be included on direct appeal are not cognizable in post-conviction review. *Zink v. State*, 278 S.W.3d 170, 191 (Mo. banc 2009) ("A movant cannot use a Rule 29.15 motion to raise claims that could have been, but were not, raised on direct appeal except in rare and exceptional circumstance."). Ineffective assistance of counsel claims must first be raised in a Rule 29.15 collateral proceeding. Mo. Sup. Ct. R. 29.15 (stating that "Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court" for ineffective assistance of counsel, among other violations). Missouri circuit courts shall not entertain successive Rule 29.15 motions. *Id.* "[A]ny allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal," including ineffective assistance of counsel claims. *Barnett v. Roper*, 941 F. Supp. 2d 1099, 1112 (E.D. Mo. 2013) (*quoting State v. Clay*, 975 S.W.2d 121, 141 (Mo. banc 1998)).

*Johnson*, 2018 WL 3008307, at *4.

A petitioner can excuse procedural default by showing either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that the failure to consider the defaulted claims "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

First, the cause-and-prejudice requirement shows due regard for "States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central

9

concern of the writ of habeas corpus.'" *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quoting

*Strickland v. Washington*, 466 U.S. 668, 697 (1984)) (alteration in original).  However, the

general rule, announced in *Coleman*, is that the cause and prejudice standard does not apply

to errors of post-conviction counsel.  *Coleman*, 501 U.S. at 757.

  The other method for excusing default, as stated in *Coleman*, is to show that there

would be a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 321

(1995); *see also Turnage v. Fabian*, 606 F.3d 933, 941 (8th Cir. 2010).  The Supreme Court

identified one miscarriage-of-justice exception as a petitioner's actual innocence.  *Schlup*,

513 U.S. at 321; *see also Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (defining

"fundamental miscarriage of justice" as "actual innocence"); *Thomas v. Payne*, 960 F.3d

465, 473 (8th Cir. 2020) (same).  To excuse default under a claim of actual innocence, a

petitioner must show that, "in light of new evidence, 'it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *House

v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup*, 513 U.S. at 327); *see also Thomas*,

960 F.3d at 473.  "'[A]ctual innocence' means factual innocence, not mere legal

insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623–24 (1998).  Of course,

petitioner must be the one to "present" his claim of actual innocence.  He must explain how

his claim of actual innocence excuses his procedural default.  See *Schlup*, 513 U.S. at 314–

15; *Sweet v. Delo*, 125 F.3d 1144, 1152 n.9 (8th Cir. 2007).

<u>Analysis of Claims</u>

Of all petitioner's claims, it appears that only claims 7, 8 (9, 10, 11, 12, 13 and 15 being encompassed by Claim 8), 32, 33, 37, and 42 are *not* procedurally defaulted for petitioner's failure to raise those claims in prior state court proceedings.  *See* [Doc. 32 at 18–26, 55–57, 60–61.]   All other claims are procedurally defaulted because petitioner failed to exhaust state remedies before raising these claims in the present motion.   The claims are grouped into four different "Grounds" and are listed numerically, as follows:

**Ground 1:** Instances of ineffective assistance of trial counsel when:

1. Complained-of trial counsel, who represented petitioner during some pre-trial proceedings between 2010 and 2012, testified at the post-conviction evidentiary hearing. [Doc. 1-1 at 3.][1]  This alleged error arose during post-conviction proceedings, but petitioner did not present this claim to either the Rule 29.15 motion court or on post-conviction appeal, so this claim is procedurally defaulted.

2. Counsel did not timely object to the trial court's acceptance of a partial verdict of guilty to Counts II (statutory rape) and III (statutory sodomy). [Doc. 1-1 at 8.]  Though petitioner raised this claim in his amended Rule 29.15 motion [Doc. 38-8 at 7–8], he did not brief this claim on post-conviction appeal, which constitutes procedural default.

---

[1] The Court will cite to docket and page numbers as designated by the court clerks in the document's header, when available. For instance, Doc. 1-1 at page 3 cites to petitioner's self-labeled page number 51.

11

3. Counsel did not object to the trial court's ruling not to re-read a witness's testimony to the jury. [Doc. 1-1 at 15.]  Petitioner defaulted on this claim because he did not present it in his Rule 29.15 motion.

4. Counsel did not object to an error in a jury instruction concerning Count III. [Doc. 1-1 at 17.] Petitioner defaulted on this claim because he did not present it in his Rule 29.15 motion.

5. Counsel did not request a mistrial for Counts II and III when moving for a mistrial on Count I.  [Doc. 1-1 at 18.]  Respondent correctly contends that this claim is substantively the same as Claim 2, so it is procedurally defaulted for the same reasons. Though petitioner raised this claim in his amended Rule 29.15 motion [Doc. 38-8 at 7–8], he did not brief this claim on post-conviction appeal.

6. Counsel did not object or move for a mistrial when the trial court did not provide a transcript or recording of A.A.'s trial testimony to the jury after the jury requested it.  [Doc. 1-1 at 18.]  Respondent correctly contends that this claim is substantively the same as Claim 3, so it is procedurally defaulted for the same reasons. Petitioner did not present the claim in his Rule 29.15 motion.

7. Counsel did not object or request a mistrial when the state admitted testimony and evidence about a suppressed laptop and CD.  [Doc. 1-1 at 18–23.] Respondent does not argue that this claim is procedurally defaulted. Within this claim, petitioner also argues that there were *Brady* violations during his

12

post-conviction proceedings. However, petitioner procedurally defaulted on his additional arguments within Claim 7 that there was "cumulative error" in his judicial proceedings, that the state knowingly used perjured testimony at trial, and that the prosecutor violated his due process rights by allegedly insulting him during the trial. Petitioner did not raise these additional claims in his 29.15 motion. [Doc. 1-1 at 19–23.]

8. Counsel "failed to do enough" in investigating state's Exhibit 3, a letter allegedly authored by petitioner and given to one of the victims, or in trying to keep Exhibit 3 out of evidence. [Doc. 1-1 at 24.] This claim is not well pleaded, but is barely sufficient to overcome procedural default. *See* [Doc. 39-8 at 7] (the original claim raised in the Rule 29.15 motion court).

9. Counsel failed to investigate Marvin Rice, the evidence custodian for Exhibit #3 at the Dent County Sheriff's Department. [Doc. 1-1 at 27.] Respondent correctly contends that this claim is substantively the same as Claim 8.

10. Counsel failed to investigate the chain-of-custody issue concerning the laptop and other evidence in the Dent County Sheriff's Department. [Doc. 1-1 at 28–40.] Respondent correctly contends that this claim is substantively the same as Claim 8.

11. Counsel did not get a copy of the hard drive from the laptop computer. [Doc. 1-1 at 40.] Respondent correctly contends that this claim is substantively the same as Claim 8.

12. Counsel did not get an expert witness to test state's Exhibit 3. [Doc. 1-1 at 40–42.] Respondent correctly contends that this claim is substantively the same as Claim 8.

13. Counsel did not obtain "forensic testing" on the laptop hard drive. [Doc. 1-1 at 42.] Respondent correctly contends that this claim is substantively the same as Claim 8.

14. Counsel failed to investigate state's Exhibit 4, a photograph of the cinnamon-flavored lubricant. [Doc. 1-1 at 43–49.] Petitioner procedurally defaulted on this claim because he failed to present the claim in his Rule 29.15 motion.

15. Counsel failed to "aggressively relitigate" the Motion to Exclude Evidence. [Doc. 1-1 at 49–50.] Respondent correctly contends that this claim is substantively the same as Claim 8.

16. Counsel did not assert petitioner's right to a speedy trial. [Doc. 1-1 at 50.] Petitioner also argues that Claim 16 includes a claim for failing to cross-examine the victims' testimonies, [Doc. 35 at 48,] but that claim is identical to Claim 17, and so Claim 16 will be narrowed to the single claim of a failure to assert speedy trial rights. Petitioner procedurally defaulted on this claim because he failed to present the claim in his Rule 29.15 motion.

17. Counsel did not cross-examine the victims in the case. [Doc. 1-1 at 51.] Petitioner presented this claim to the Rule 29.15 court, which found it to be meritless. [Doc. 38-8 at 38–40.] Petitioner procedurally defaulted on this claim because he failed to present it on his Rule 29.15 appeal.

18. Counsel did not contradict petitioner's own pre-trial recorded statement to the police.  [Doc. 1-1 at 51.]  Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

19. Counsel did not call attention to the fact that petitioner was not read his *Miranda* rights before he gave his original statement to investigators or that state's Exhibit 5 was an edited and redacted re-recording of that original statement.  [Doc. 1-1 at 54–55.]  Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

20. Counsel did not call S.L., the victims' mother, as a witness.  [Doc. 1-1 at 55.] Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

21. Counsel did not introduce the pre-trial depositions of S.L, M.L., or A.A. [Doc. 1-1 at 55.]  Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

22. Counsel did not call Anthony Hanson as a witness.  [Doc. 1-1 at 55–56.] Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

23. Counsel did not impeach Detective Becker.  [Doc. 1-1 at 56–58.]  Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

24. Counsel did not investigate the prior counsel's files for prior statements by the victims. [Doc. 1-1 at 58–59.] Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

25. Counsel "denied and prevented" petitioner from presenting the jury with "his theory of the case." [Doc. 1-1 at 59–61.] As part of this claim, petitioner claims that he was denied his right to testify at trial. *Id. But see* [Doc. 38-2 at 157–230] (petitioner testifying at trial). Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

26. Counsel did not object to out-of-court statements by Windy Nerrill. [Doc. 1-1 at 61.] Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

27. Counsel did not correct a mistake in the sentence assessment report about the length of petitioner's military service, or otherwise object to the prosecution's closing argument concerning his military service. [Doc. 1-1 at 61.] Petitioner presented this claim to the Rule 29.15 court, which found it to be meritless. [Doc. 38-8 at 38–40.] Petitioner procedurally defaulted on this claim because he failed to present it on his Rule 29.15 appeal.

28. Counsel did not "spend enough time speaking with [petitioner] about the case," counsel did not "listen to [petitioner,]" counsel "play[ed] [petitioner] off as being illiterate and unknowing about computers." [Doc. 1-1 at 62.] Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

16

**Ground 2:** Instances of ineffective assistance of appellate counsel when:

29. Direct appeals counsel did not raise an ineffective assistance of counsel claim against trial counsel for failing to timely object to the partial jury verdicts. [Doc. 1-1 at 63.]  As discussed *infra*, this claim is non-cognizable.

30. Direct appeal counsel failed to brief a claim of trial court error when the trial court admitted state's Exhibit 3, a type-written note, due to lack of authentication.  [Doc. 1-1 at 64.]  Petitioner did present this claim to the Rule 29.15 motion court, which found it to be meritless.  [Doc. 39-8 at 8, 42–43.] Petitioner procedurally defaulted on this claim because he did not present it on his Rule 29.15 appeal.  [Doc. 38-15.]

31. Direct appeal counsel did not brief the claim of trial court error because state's Exhibit 4, the photograph of the cinnamon-flavored lubricant, was not "the best evidence."  [Doc. 1-1 at 64.]  Petitioner procedurally defaulted on this claim because he failed to present it in his Rule 29.15 motion.

32. Post-conviction appellate counsel failed to file a motion to amend the post-conviction findings of fact, conclusions of law, and judgment.  [Doc. 1-1 at 64–65.]  As discussed *infra*, this claim is non-cognizable.

33. Post-conviction appellate counsel failed to file exhibits with the post-conviction appellate court.  [Doc. 1-1 at 66–68.]  As discussed *infra*, this claim is non-cognizable.

**Ground 3:** Error of the trial court when:

34. The trial court overruled the motion for a new trial.  [Doc. 1-1 at 69.]  As this Court understands this claim, the trial court should have granted a motion for a new trial because of error stemming from the other listed claims 35 through 41.  Those claims form the factual basis for this Claim 34 of trial court error.  Because none of the other claims of trial court error warrant relief, neither does this claim.

35. The trial court accepted the jury's verdicts on Counts II and III before the jury rendered its verdict on Count I.  As noted, this claim was presented on direct appeal and the state appellate court found this error to be unpreserved.  *Miller Direct Appeal*, 531 S.W.3d at 93.  Within this claim, petitioner also suggests that there was an error with the jury instruction with Count III.  He did not object to the instruction at trial, and so the appellate court found the error to be unpreserved, which means petitioner procedurally defaulted on this claim.

36. The trial court did not grant a mistrial as to Count I because the failure was tantamount to directing a verdict on Count I [Doc. 1-1 at 70–71.]  The state court of appeals declined review because petitioner had not presented this claim to the trial court.  *Miller Direct Appeal*, 531 S.W.3d at 93–94.  This means petitioner procedurally defaulted on this claim.

37. The trial court sent state's Exhibit 4, a photograph of the cinnamon lubricant, to the jury after the jury requested to see a copy of the warning letter and

pictures of the victims. [Doc. 1-1 at 71–72.] This claim was presented to the trial court in a motion for a new trial, which the court overruled. [Doc. 38-6 at 118–19.] On appeal, the appellate court found no abuse of discretion. *Miller Direct Appeal*, 531 S.W.3d at 94. Respondent does not argue that this claim is procedurally defaulted, but rather that it is not cognizable under section 2254(a) and that, alternatively, it is meritless. [Doc. 32 at 56.]

38. The trial court overruled petitioner's objection to Wendy Mayes's testimony about what M.L. told Mayes was written on a note from petitioner. [Doc. 1-1 at 72–73.] Petitioner presented this claim in his motion for a new trial, [Doc. 38-6 at 119–25,] but he did not brief the claim on direct appeal or in his Rule 29.15 motion. [Doc. 38-8 at 7–8.] Thus, petitioner procedurally defaulted this claim.

39. The trial court admitted state's Exhibit 3 due despite an alleged lack of foundation. [Doc. 1-1 at 72–73.] Petitioner presented this claim in his motion for a new trial, [Doc. 38-6 at 119–25,] but he did not brief the claim on direct appeal or in his Rule 29.15 motion. [Doc. 38-8 at 7–8.] Thus, petitioner procedurally defaulted this claim.

40. The trial court admitted state's Exhibit 4, in violation of the best evidence rule. [Doc. 1-1 at 73.] Petitioner presented this claim in his motion for a new trial, [Doc. 38-6 at 119–25], but he did not brief the claim on direct appeal or in his Rule 29.15 motion. [Doc. 38-8 at 7–8.] Thus, petitioner procedurally defaulted this claim.

19

41. The trial court did not find that there was insufficient evidence to sustain a guilty verdict either at the close of the state's case or at the close of trial. [Doc. 1-1 at 73.] Petitioner presented this claim in his motion for a new trial, [Doc. 38-6 at 119–25], but he did not brief the claim on direct appeal or in his Rule 29.15 motion.  [Doc. 38-8 at 7–8.]  Thus, petitioner procedurally defaulted this claim.

**Ground 4:** Error of the post-conviction appellate court when:

42. The court of appeals held that his two ineffective assistance of trial counsel claims were meritless.  [Doc. 1-1 at 74–76.]  The Court finds that this ground is not an independent claim for habeas relief but is just petitioner repeating his belief that the court of appeals should not have reversed the state motion court.

 The Court has carefully reviewed all of petitioner's pleadings, filings, and exhibits, which amount to hundreds of pages of documents.  *E.g.* [Doc. 1, 2, 3, 4, 5, 6, 35.]  Based on the reasons set forth below, most of petitioner's claims will be denied as procedurally defaulted, while the remaining claims will be denied without an evidentiary hearing because they are without merit.

## IV.    Procedurally Barred Claims

As noted, for a federal court to review any procedurally defaulted claims, petitioner must show "good cause and prejudice" or demonstrate a "fundamental miscarriage of justice," which typically means "actual innocence."  *Murphy v. King*, 652 F.3d 845, 850

(8th Cir. 2011).  Before the reviewing court addresses any claim of "actual innocence" in a non-capital case, such as this one, the court "must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." *Dretke v. Haley*, 541 U.S. 386, 393–94 (2004).  This is to avoid the many "threshold legal questions often accompanying claims of actual innocence," *id.* at 395, and because, for the most part, victims of a fundamental miscarriage of justice would have already met the cause-and-prejudice standard.  *Id.* at 394.

Cause and Prejudice

As explained, generally, any attorney error in a state post-conviction proceeding that leads to procedural default "cannot constitute cause to excuse the default in federal [court.]"  *Coleman v. Thompson*, 501 U.S. 722, 757 (1991); *see also Johnson*, 2018 WL 3008307, at *4–5.  Thus, the *Coleman* rule applies to petitioner's claims of trial court error that post-conviction counsel did not raise in the Rule 29.15 motion or on appeal.  Any error of post-conviction counsel to raise those claims does not provide cause to excuse default of those claims.  Thus, Claims 34, 35, 36, 38, 39, 40, and 41 remain procedurally defaulted

There is, however, a limited exception to the general *Coleman* rule as it applies to ineffective assistance of post-conviction counsel, as this Court has previously explained:

**The federal cause requirement and ineffective assistance of counsel.** In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced an exception to the longstanding *Coleman* rule that ineffective assistance of post-conviction counsel cannot establish cause to overcome procedural default.  The Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

> *Martinez*, 566 U.S. at 17. To satisfy *Martinez*, petitioner must show that his counsel in the initial post-conviction proceeding was ineffective under the standards of *Strickland*. *Id.* at 14. Petitioner must also show "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." *Id.*

> As for what amounts to a "substantial" claim, the Supreme Court in *Martinez* suggested (by citing *Miller–El v. Cockrell*, 537 U.S. 322 (2003)) that courts should apply the standards for certificates of appealability to issue. *Id.*; *see also Barnett*, 941 F. Supp. 2d at 1113. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a substantial showing of the denial of a constitutional right." "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

> This exception is narrow. By its own plain language, *Martinez* applies only to ineffective assistance of trial counsel claims that initial post-conviction counsel failed to raise. Any other claims of ineffective assistance of counsel—whether by direct appeal counsel, initial post-conviction counsel, or post-conviction appeal counsel—are not recognized by *Martinez*.

*Johnson*, 2018 WL 3008307, at *4–5; *see also Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (holding that the *Martinez* exception does not apply to procedurally defaulted claims for ineffective assistance of counsel that were raised in the 29.15 petition but then not raised in post-conviction appeal). When reviewing a *Martinez* claim for ineffective assistance of state post-conviction counsel, a federal habeas court may not consider evidence outside the state-court record, which includes any newly-submitted evidence by a petitioner. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022). Therefore,

Claims 2, 5, 17, 27, and 30 remain procedurally defaulted because post-conviction counsel raised them in the 29.15 motion, even if counsel failed to raise them on appeal from the 29.15 motion. *See id.*

Claims 1, 3, 4, 6, 14, 16, 18, 19–26, 28, and 31 remain the only claims for ineffective assistance of counsel that were not raised in the initial 29.15 motion but could have been raised to avoid default. Again, for these claims, petitioner "may establish cause for a default of an ineffective-assistance claim . . . [by showing] appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*. . . ." *Martinez*, 566 U.S. at 14. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a *substantial one*, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* (emphasis added).

To reiterate the standards for what makes a claim "substantial":

> . . . the Supreme Court in *Martinez* suggested (by citing *Miller–El v. Cockrell*, 537 U.S. 322 (2003)) that courts should apply the standards for certificates of appealability to issue. *Id.*; *see also Barnett*, 941 F. Supp. 2d at 1113. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a substantial showing of the denial of a constitutional right." "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

*Johnson*, 2018 WL 3008307, at *5. Here, to demonstrate cause under *Martinez*, petitioner complains that post-conviction counsel should have moved for a rehearing or transfer to the Missouri Supreme Court on all claims to avoid procedural default. [Doc. 35 at 3–4.] But as post-conviction counsel correctly explained in a letter to petitioner, [Doc. 2-2],

23

transfer of his 29.15 motion to the Missouri Supreme Court was not necessary to avoid procedural default. *See Sweet v. Delo*, 125 F.3d 1144, 1149–50 (8th Cir. 1997). Petitioner also argues that he "had no control over what the court appointed counsel filed or did not file. . ." [Doc. 35 at 29.] But even assuming that post-conviction counsel chose not to raise all issues that petitioner wished for him to raise, that alone does not show cause. Instead, petitioner must make out a "substantial claim" for each and every claim of ineffective assistance of counsel not raised in his 29.15 petition.

As to Claim 1—that petitioner's prior, pre-trial counsel testified at his post-conviction proceeding—petitioner fails to make out a substantial claim of ineffective assistance. Petitioner had already been convicted, sentenced, and exhausted direct appeals by that point. Counsel's testimony at the post-conviction proceeding, which he presumptively gave under a subpoena, was not error. All petitioner points to are his own conclusory allegations that counsel was ineffective, that he didn't know what he was doing, and that he suffered prejudice because of that error. *E.g.*, [Doc. 35 at 30–31.] Claim 1 remains procedurally defaulted.

As to Claim 3—that counsel failed to object to the trial court deciding not to re-read the victims' testimonies to the jury—petitioner fails to make out a substantial claim of ineffective assistance. He does not explain how he was prejudiced by the jury not hearing the testimony a second time, and if anything, rereading their testimonies—the primary proof of his guilt—would have hurt his cause more than helped it. Claim 3 remains procedurally defaulted. As Claim 6 is substantively the same as Claim 3, Claim 6 also remains procedurally defaulted.

24

As to Claim 4—that counsel failed to object to a typographical error in the jury instruction during the penalty phase of trial—petitioner fails to make out a substantial claim of ineffective assistance.  The penalty phase verdict director accurately stated the range of punishment for second-degree statutory rape, even with the typographic error.  [Doc. 38-6 at 107.]  Petitioner fails to show how this prejudiced him.  Claim 4 remains procedurally defaulted.

As to Claim 14—that counsel should have further investigated state's Exhibit 4, a photograph of cinnamon lubricant, to try to exclude that exhibit from trial—petitioner makes conclusory statements that "further investigation" would have resulted in the evidence being excluded and this would have changed the outcome of the trial.  This bare bones claim does not satisfy his burden to show a substantial claim of ineffective assistance of counsel, nor does it warrant further investigation.  Furthermore, it could be argued that Claim 14 is superseded by Claim 37 because Claim 37 concerns whether the outcome of petitioner's trial would have been different if some, or all, of the state's exhibits were excluded.  Because Claim 14 deals with excluding Exhibit 4, this Claim would also be rejected even on the merits, the same as Claim 37.  In any event, Claim 14 remains procedurally defaulted.

As to Claim 16, petitioner does not make out a substantial claim because he has not shown either that counsel failed to support petitioner's Sixth Amendment right to speedy trial, nor that petitioner was prejudiced by this.  Claim 16 is procedurally defaulted.

For the remaining procedurally barred claims that were not raised in the 29.15 petition—18 through 26, 28, 29, and 31—petitioner repeats more of his same arguments.

25

He reiterates he had "no control" over what was filed, followed by a conclusory statement that the alleged "error" fell below reasonable standards for counsel, and that such error was prejudicial. *E.g.*, [Doc. 35 at 53.]  Petitioner does not identify any law or facts that would help him show substantial claims of ineffective assistance of counsel for these defaulted claims.  In any event, a prisoner ordinarily bears responsibility for all attorney errors during state post-conviction proceedings.  *Shinn*, 142 S. Ct. at 1735. Accordingly, for all the procedurally defaulted claims not brought in the 29.15 motion, petitioner fails to show cause why the default should be excused under *Martinez*.

Later in his traverse, petitioner argues that he has cause to excuse his default because he alleges that he has obtained "new evidence" that shows the government caused the default by wrongly withholding exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  "Because the State's suppression of evidence is both a factor external to the defense and an element of a *Brady* claim, the claim *sometimes* may provide its own cause to excuse a procedural default."  *Dansby v. Payne*, 47 F.4th 647, 659 (8th Cir. 2022) (citing *Hall v. Luebbers*, 296 F.3d 685, 699 (8th Cir. 2002)) (emphasis added).  Petitioner attaches what he dubs "undisclosed evidence in favor of Petitioner. . . ."  [Doc. 35 at 2–3.] These records are prior statements given by the victims to social services over the course of several years.  In some of these records, the victims deny that petitioner abused them. *E.g.*, [Doc. 35 at 121–22.]  Petitioner then makes several claims that these filings show that the government knew it used perjured statements at trial or that this evidence could have been used to impeach the victims' testimony.  [Doc. 35 at 6–7.]

26

Even though this evidence could have been used to impeach the victims' testimonies, as petitioner and trial counsel admitted, this evidence was in petitioner's possession during trial. Petitioner states his new evidence "was available and in the possession of the Respondent, and *all past legal counsel* involved in this case." [Doc. 35 at 3–4] (emphasis added). Notably, trial counsel testified at a post-conviction evidentiary hearing that he had the victims' prior inconsistent statements in his possession but chose not to use it as a matter of trial strategy. [Doc. 38-9 at 203–09.]

Thus, by petitioner's own admission and as the record clearly shows, his filed exhibits are not "new evidence" because they were available to petitioner at his trial. In any event, trial counsel made the strategic decision to conduct *no* cross-examination of the victims whatsoever to avoid harmful redirect examination, [Doc. 38-1 at 165–66, 186; Doc. 38-8 at 40], so that even if some new impeachment evidence were uncovered, it would not even have come up at trial. This means petitioner's claim of a *Brady* violation provides neither cause nor prejudice to excuse procedural default. *See Dansby*, 47 F.4th at 659. Accordingly, the Court concludes that only Claims 7, 8, 29, 32, 33, 37, and 42 remain non-procedurally defaulted.


## V.  Remaining Claims

After dispensing with petitioner's procedurally defaulted claims, only claims 7, 8, 29, 32, 33, 37, and 42 remain. Claims 29, 32, and 33 are not a cognizable basis for federal habeas relief, and the remaining claims are discussed in turn.

a.  Non-Cognizable Claims 29, 32, 33

Claims 29, 32, 33 are not procedurally defaulted, but these claims are not a cognizable basis for relief in a federal habeas petition.  Claim 29 is a claim that direct appeals counsel erred by failing to bring a claim for ineffective assistance of counsel against trial counsel on direct appeal. As discussed *supra*, Missouri does not allow ineffective assistance of counsel claims to be brought on direct appeal, *Johnson*, 2018 WL 3008307, at *4–5, so such a claim is non-cognizable.  Meanwhile, Claims 32 and 33 are standalone claims of ineffective assistance of counsel against post-conviction appeals counsel.  These claims are non-cognizable because a claim of ineffective assistance of post-conviction counsel is not a basis for habeas relief.  28 U.S.C. § 2254(i);  *Coleman*, 501 U.S. at 756–57.

b.  Claim 7

Petitioner's Claim 7 is that he received ineffective assistance of counsel because trial counsel did not object when the state's witness testified about what he found from analyzing a laptop and CD while the contents of the laptop and CD had previously been suppressed.  [Doc.1-1 at 18–23.]  Purportedly, trial counsel's non-objection was a matter of trial strategy in that he thought a jury would not believe that petitioner would have the technical knowledge for burning a CD from a laptop.  *Miller Post-conviction*, 636 S.W.3d 197, 202 (Mo. App. S.D. 2021).  The motion court thought that this was prejudicial error and agreed with petitioner on this claim, respondent appealed, and the court of appeals

28

reversed the motion court. *Id.* at 204.  This Court must now review the appellate court's decision.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to prevail on an ineffective assistance of counsel claim.  First, the petitioner must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id*. at 687.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable.  *Id.*

Regarding the first prong of the *Strickland* test, the proper standard for attorney performance is that of reasonably effective assistance.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 687–88.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.

The second prong of the *Strickland* test requires a petitioner to prove that he was prejudiced by counsel's deficient performance.  *Id*. at 691.  The defendant "must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694 (emphasis added).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), the reviewing court must give substantial deference to the state court's predictive judgment so long as the state court's decision was not contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States. *Williams v. Roper*, 695 F.3d 825, 830 (8th Cir. 2012) (citing 28 U.S.C. § 2254(d)(1)). When those claims are based on ineffective assistance of counsel under *Strickland*, AEDPA and *Strickland* together create a "doubly deferential standard of review." *Id.* at 831. "First, under *Strickland*, the state court must predict (under the prejudice prong) whether the result of the trial would have been different without the alleged deficiencies of trial counsel." *Johnson*, 2018 WL 3008307, at *12 (citing *Williams*, 695 F.3d at 831). "Second, under the AEDPA, the federal habeas court must then give substantial deference to the state court's predictive judgment." *Id.* (cleaned up).

On review of petitioner's Rule 29.15 motion, the court of appeals held that Claim 7 was meritless. Initially, the court reviewed the facts underlying the conviction, *Miller Post-conviction*, 636 S.W.3d at 199–200, including the Children's Division investigation, *id.* at 200, the warranted search of petitioner's trailer, petitioner's inculpatory statements, and, of course, the testimony of the two victims. *Id.* at 200–01. In overturning the ruling of the motion court, the court of appeals analyzed petitioner's ineffectiveness claim under the familiar standard from *Strickland v. Washington*. *Id.* at 203 (quoting *Jones v State*, 631 S.W.3d 682, 685-86 (Mo. App. S.D. 2021)).

Without examining the first prong of *Strickland*—whether counsel committed error—the court of appeals held that petitioner's claim was meritless because he did not show *Strickland* prejudice and that the 29.15 motion court applied the wrong standard of review. Specifically, petitioner could not show that there was a reasonable *probability*, as

30

opposed to a reasonable *possibility*, that the outcome of the trial would have been different

had his attorney objected to testimony from deputy Becker about what he found on the

laptop and CD recovered from petitioner's trailer:

> Here, the motion court concluded there was only a reasonable *possibility* that exclusion of Deputy Becker's testimony about the computer and CD would have changed the outcome of the proceeding. Our review of the entire record supports that conclusion. The primary proof of Movant's guilt came from the testimony of M.L. and A.A. Each one testified about Movant's unusual statements and the peculiar timing of the sexual assaults committed. M.L. also provided direct testimony to support the admission of Exhibit 3, which she identified as a letter from Movant asking her to say nothing about the sexual assault. Deputy Becker's testimony merely provided cumulative evidence that tended to show the possibility Movant wrote and printed Exhibit 3. Attorney Williams' failure to object to this cumulative evidence does not result in prejudice, even if the trial court would have sustained the objection. *Farr v. State*, 408 S.W.3d 320, 323 (Mo. App. 2013). The State's first point is granted.

*Id.* at 204. The appellate court's decision is a reasonable one that receives deference under

28 U.S.C. § 2254(d).

As held by the court of appeals, the information on the laptop and the CD was

cumulative and only showed the possibility that petitioner wrote and printed state's Exhibit

3. *Miller Post-conviction*, 636 S.W.3d at 204. Furthermore, there was substantial evidence

of petitioner's guilt apart from Exhibit 3, especially the direct testimony of the victims.

*Miller Post*-Conviction, 636 S.W.3d at 204. Additionally, the victims' testimonies showed

common patterns of behavior from petitioner, including his stated desire to have sex with

the victims on their graduation days. [Doc. 38-1 at 148, 173–76.] Petitioner's behavior

towards the Children's Division and law enforcement was evidence that indicated a

consciousness of guilt, especially his threat to destroy other evidence. [Doc. 38-1 at 208;

Doc. 38-2 at 11–13, 94–95.]  Lingerie that was too small for his girlfriend was found in petitioner's bedroom, supporting an inference that petitioner wanted one or both of the girls to wear the lingerie to satisfy his sexual desires.  [Doc. 38-2 at 92.]  A tube of cinnamon-flavored lubricant was found in petitioner's trailer. [Doc. 38-2 at 85, 88.].  Both M.L. and A.A. testified that petitioner had a bottle of cinnamon-flavored lubricant that he used for sexual intercourse with them.  [Doc. 38-1 at 160–61, 177.]

Finally, there was petitioner's statement to the police, in which he admitted to engaging in "heavy petting" with M.L. when she was still a minor.  [Doc. 38-2 at 111.]  When investigators asked him to elaborate on what he meant by this, he responded that it was "like a poodle on your leg, bumping and grinding, polishing your belt buckle."  *Id.* at 111–12.  Petitioner also described his desire to "christen" M.L's bedroom.  *Id.*  A jury could reasonably view these admissions as petitioner acknowledging his sexual attraction to M.L. and his minimizing the extent to which he acted on his sexual desires.  Because of the strong evidence of petitioner's guilt aside from the laptop and CD, he has not demonstrated a reasonable probability that the jury would have found him not guilty but for the challenged actions of trial counsel.  Petitioner's seventh claim is meritless.

The posture of the claim is similar to *Lawrence v. Armontrout*, 961 F.2d 113 (8th Cir. 1992).  In *Lawrence*, the district court applied an incorrect analysis of the *Strickland* prejudice standard, leading to reversal by the appellate court.  *Id*. at 115.  In this case, the motion court also applied an incorrect prejudice standard by looking for a reasonable *possibility* of prejudice instead of a reasonable *probability*. When the appellate court

applied the correct *Strickland* standard, like the petitioner in *Lawrence*, petitioner failed to demonstrate prejudice.

Also in Claim 7, petitioner accuses the state of a *Brady* violation because, he alleges, the state did not make a complete record before the court of appeals on the post-conviction appeal. [Doc.1-1 at 19.] A claimed error in a state post-conviction proceeding is not a cognizable basis for federal habeas relief because the Constitution itself does not guarantee the existence of state post-conviction proceedings. *Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)). Nor do *Brady* rights extend to post-conviction proceedings. *See Dist. Attorney's Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009). If petitioner wishes to challenge the sufficiency of state post-conviction proceedings, he must show that "the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id.* at 69 (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)).

Construing petitioner's complaints as an argument that the state's procedures fail the *Osborne* standard, *see* [Doc. 1-1 at 19], his claim is meritless. First, petitioner fails to specify how Missouri's procedures offend any principle of justice and how they violate fundamental fairness in operation. Missouri Supreme Court Rule 81.15(b) allows resolutions of disputes about the record on a civil appeal. If petitioner is complaining that the appeals court did not consider an exhibit that he filed with the Rule 29.15 motion court, then he could have included that exhibit as a part of the appellate record under Rule 81.16.

33

Indeed, the appellate court's docket sheet shows that petitioner managed to file multiple exhibits in the appellate court.  [Doc. 40-3.]

Finally, for all of petitioner's numerous points of error found in Claim 7, respondent argues that any grant of relief to petitioner would require the creation of new Constitutional rights that would be retroactively applied to petitioner, which would violate the non-retroactivity principles of *Teague v. Lane*, 489 U.S. 288 (1989) (holding that new constitutional rules of criminal procedure cannot be applied retroactively to cases that were finalized before the new rules were announced).

Nonetheless, petitioner argues that his requested relief would not be *Teague* barred because it falls within *Teague's* second exception to allow new "watershed" rules of criminal procedure to apply retroactively.  [Doc. 35 at 41.]  The Supreme Court has explicitly rejected *Teague's* second exception as a means of retroactively applying new constitutional law.  *Edwards v. Vannoy*, 141 S. Ct. 1547, 1560 (2021).  Thus, petitioner's argument under *Teague's* second exception for this—and any other of his claims—prevents this Court from fashioning a new constitutional right and then retroactively applying it to his claim.  *Id.* at 1562 (holding that only new substantive rules that alter "the range of conduct or the class of persons that the law punishes" can apply retroactively to federal collateral review).

### c.  Claim 8

As discussed, the Court does not view Claim 8 as procedurally defaulted because it is similar to other claims that petitioner raised in his initial Rule 29.15 motion and appeal.

*See* [Doc. 38-8 at 7–8.] Additionally, the Court considers Claims 9, 10, 11, 12, 13, and 15 to be substantively the same as Claim 8.  In his Rule 29.15 motion, petitioner contended that he received ineffective assistance of counsel for failing to "vigorously litigate and obtain a ruling on [petitioner's] 'Motion to Exclude All Evidence in the DCSD Evidence Room' prior to the date of the trial."  *Id.*  The Missouri court of appeals determined that claim was meritless because the state presented sufficient foundation for the admission of state's Exhibit 3—the letter—without reference to the putative flaws in the evidence room technique:  "Exhibit 3 was the two-page letter M.L. found in her Ag book. M.L. laid the foundation for admission of this exhibit. She testified that she found the letter in her Ag book, and she explained how she knew it was from Movant." *Miller Post-conviction*, 636 S.W.3d at 201.  Because the foundation of state's Exhibit 3 was independent of the alleged deficiencies of the evidence room procedures, petitioner demonstrated no *Strickland* prejudice.  *Id.* at 205.   The court of appeals further explained:

> Exhibit 3 was the letter M.L. found in her Ag book. The foundational requirements for admission of a document applied. "A document must be authenticated before it can be admitted into evidence." *State v. Abdi*, 611 S.W.3d 536, 540 (Mo. App. 2020).  "Courts may rely upon circumstantial evidence to authenticate a writing." *Id.*  "So long as sufficient evidence justifies the trial court's admission of evidence as authentic, any weaknesses as to the authenticity of the evidence are for the jury to consider." *Id*. M.L. authenticated Exhibit 3 and explained how she knew it was from Movant.

*Id.*  The court of appeals' determination is a reasonable one that should receive deference under section 2254(d).  Petitioner's reply is unavailing.  He merely reiterates his argument that the evidence room's chain-of-custody and preservation procedures were flawed.  *E.g.*, [Doc. 35 at 42–43.]  Because the underlying issue—the admissibility of evidence—is one

of state law, the state court's determination should receive deference. *Estelle v. McGuire*,
502 U.S. 62, 71–72 (1991). This is in addition to the deference given to state court findings
under section 2254(d). The Due Process Clause does not permit the federal courts to review
the wisdom of state evidentiary rules. *Id.* at 72 (quoting *Marshall v. Lonberger*, 459 U.S.
422, 438, n.6 (1983)). Accordingly, additional information about the chain-of-custody
would not have affected the admissibility of Exhibit 3. Claim 8 is meritless.


   d. <u>Claim 37</u>

  Petitioner's Claim 37—the fourth claim under Ground 3—is that the trial court erred
by sending into the jury room state's Exhibit 4, a photograph of the cinnamon lubricant
[Doc.1-1 at 71–72.] During deliberations, the jury requested to see a copy of the warning
letter and pictures of the victims. [Doc. 38-3 at 54–55.] The trial court's general policy
was to send all exhibits to the jury, except for the audio statement because it was testimonial
*Id.* at 55. The court sent the jury state's Exhibits 1, 2, 3, and 4. *Id.* at 55. Petitioner's
counsel agreed that Exhibit 5, petitioner's prior statement to the police, should not go into
the jury room, *id.* at 57, but counsel objected to sending the picture of the lubricant on the
basis that the jury had not requested to see it. *Id.* at 56–57. Petitioner included the claim
in the motion for a new trial [Doc. 38-6 at 118–9], but the trial court overruled the motion.
On direct appeal, the appellate court found no abuse of discretion. *Miller Direct Appeal*,
531 S.W.3d 91, 94 (Mo. App. S.D. 2017).

  First, this claim is not cognizable under section 2254(a) because there is no case law
suggesting that sending trial exhibits into the jury room violates the Constitution or law of

the United States.  For petitioner to present this claim, he is requesting the Court to create and apply a new rule of constitutional law, which would violate the non-retroactivity principles of *Teague*, discussed *supra*.  Even so, his claim is meritless.  As held by the court of appeals, the trial court did not abuse its discretion in sending the photograph of the lubricant to the jury.  *Miller Direct Appeal*, 531 S.W.3d at 94.  "Defendant has no good answer to Missouri cases finding no abuse of discretion where, as here, a trial court sent the jury more exhibits than it had requested."  *Id.* (citing supporting cases).  The court of appeals' determination is a reasonable one that should receive deference under section 2254(d).  Petitioner has not pointed to any federal law on this point either.  In the absence of any legal arguments in support of Claim 37, that claim must fail.

Next, petitioner's traverse attacks the authentication of Exhibit 4, the photograph of the cinnamon lubricant, as opposed to the trial court's decision to give that photograph to the jury.  [Doc. 35 at 92–94.]  This is a reiteration of Claim 40—the eighth claim of Ground 3—but, as discussed above, that claim is procedurally defaulted.   [Doc. 35 at 93.] Petitioner's only argument beyond attacking the authenticity of the photograph is his conclusory allegation that the trial court abused its discretion in either not excluding all of the state's exhibits on chain-of-custody issues or in otherwise sending some of the exhibits back to the jury.  *Id.* at 93–94.  This is not the case.  As the court of appeals explained, "[t]here were only five exhibits admitted during the second trial.  None of those exhibits required chain-of-custody evidence as a foundation for admission."  *Miller Post-conviction*, 636 S.W.3d at 205.  The court of appeals concluded that all five exhibits were authenticated by witnesses who testified based on their own personal observations.  *See id.*

at 205 (discussing the authentication of each piece of evidence).  Again, that determination is a reasonable one that should receive deference under section 2254(d).  Accordingly, petitioner's Claim 8 does not warrant habeas relief.

### e.  Claim 42

Petitioner's final claim—Claim 42, the first and only claim under Ground 4—is that the post-conviction court of appeals erred in reversing the motion court.  This claim is meritless.  Because the Constitution does not guarantee the existence of state post-conviction proceedings, "[a]ny error in [petitioner's] state post-conviction proceeding is not a constitutional error that could justify granting an application for a writ of habeas corpus.  *Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007).  To the extent petitioner asserts that the court of appeals should have granted him relief on his other claims, those claims have been rejected.

## VI.    Actual Innocence

Having determined that petitioner is not entitled to habeas relief under his nondefaulted claims, nor has he shown cause or prejudice to excuse his defaulted claims, per *Dretke*, 541 U.S. at 393–94, the Court now turns to whether petitioner has articulated a claim of actual innocence to allow for review of petitioner's defaulted claims.  As discussed, a claim that a fundamental miscarriage of justice has occurred in a legal proceeding—such as the sentencing and conviction of a factually innocent person—can be a gateway to allow procedurally defaulted claims to be heard.  *Schlup v. Delo*, 513 U.S.

298, 321 (1995); *see also Turnage v. Fabian*, 606 F.3d 933, 941 (8th Cir. 2010); *Thomas v. Payne*, 960 F.3d 465, 473 (8th Cir. 2020).  But petitioner fails to articulate a case for actual innocence, or show that he is, in fact, factually innocent of the alleged offenses.

Nowhere in his extended 99-page petition does he argue that he is factually innocent of the alleged offenses.  Instead, he only claimed that he has cause to excuse default because his post-conviction counsel told him to file a section 2254 petition instead of petitioning the Missouri Supreme Court.  *E.g.*, [Doc. 1 at 7.]  Meanwhile, in his 109-page traverse, petitioner only mentions, in passing, that he is an actually "innocent" person and that he "maintains his innocence."  *E.g.*, [Doc. 35 at 5, 108.]  Bare, conclusory assertions of actual innocence are insufficient to excuse a procedural default, nor is a petitioner entitled to a hearing to develop evidence of actual innocence.  *Sweet v. Delo*, 125 F.3d 1144, 1152 n.9 (8th Cir. 2007).  Nowhere in his traverse does he articulate a *Schlup* claim that actual innocence should excuse his procedural default.  Instead, he merely reiterates his belief that the "nondisclosure" of certain exhibits in his post-conviction proceedings, allegedly in violation of *Brady v. Maryland*, establishes cause and prejudice to excuse the procedural default.  *E.g.*, [Doc. 35 at 7.]  As discussed earlier, this "new evidence" does not provide cause and prejudice.

In short, petitioner fails to state any claim of actual innocence to excuse default, even if he suggests that he is innocent.  *See Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (denying access to a potential fundamental-miscarriage-of-justice exception when the petitioner failed to present any evidence of actual innocence and only made allegations that his proceedings were "unfair").  Like in *Murphy*, petitioner only complains about the

39

fairness of the legal proceedings against him. He argues that the evidence used against him at trial was either insufficient, misleading, or should have been excluded. *E.g.*, [Doc. 35 at at 16–18.] But "actual innocence" means "factual innocence," it does not mean mere "legal insufficiency" of evidence or that a conviction was wrongly obtained. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). Petitioner's claims are limited to alleged constitutional violations in the criminal proceedings against him, and those alone are insufficient to establish a miscarriage of justice to allow this Court to reexamine procedurally defaulted claims. *See Schlup*, 513 U.S. at 316.

As discussed, petitioner admits that the "new evidence" he purports to bring "was available and in the possession of the Respondent, and *all past legal counsel* involved in this case." [Doc. 35 at 3–4] (emphasis added). His filed exhibits are not "new evidence" because they were created and available to petitioner before his trial. *See Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014) (explaining that "new evidence" means evidence that was not available during trial). Finally, the "new evidence" consists mostly of records of the victims' prior inconsistent statements given to the state Division of Family Services before his trial occurred. To be sure, these prior statements could have been used to impeach their testimonies at petitioner's trial, but as noted, trial counsel elected not to use the statements for impeachment because it would have allowed the state to introduce harmful, rehabilitative testimony on redirect. *E.g.*, [Doc. 38-9 at 207.] The 29.15 motion court agreed with the trial attorney's assessment, finding this to be a reasonable trial strategy. *See* [Doc. 38-8 at 40.] Thus, this "new evidence" is solely "designed to

undermine the credibility of prosecution witness[es]," but impeachment evidence rarely, if ever, establishes actual innocence. *Id.* at 816–17.

In any event, petitioner's new evidence does not show actual innocence.  It is not likely in the least that the introduction of this evidence, which would have allowed the state to introduce the prior testimonies of the victims that further implicated petitioner, would have changed the outcome of the trial.  *See House v. Bell*, 547 U.S. 518, 536–37 (2006). Accordingly, petitioner fails to make out a claim of actual innocence that would excuse his procedural default.


**VII.    Conclusion**

Petitioner is not entitled to relief on any of his nondefaulted claims, nor has he shown "cause and prejudice" or a "fundamental miscarriage of justice" that warrants examination of his procedurally defaulted claims.  For the foregoing reasons, the Court will deny petitioner's section 2254 motion without an evidentiary hearing.


**VIII.    Other Pending Motions**

Petitioner's other pending motions are duplicative of his initial request for habeas relief: he moves for appointment of counsel, for evidentiary hearings, and for his section 2254 motion to be granted.  [Doc. 20, 28, 29, 33, 34, 35, 41, 44, 45.]  As discussed in Section I of this opinion, petitioner's supplemental petition, [Doc. 43] is also rejected.

Accordingly,

**IT IS HEREBY ORDERED** that to whatever extent petitioner seeks to file a supplemental habeas petition and raise new claims [Doc. 43], that request is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's petition under 28 U.S.C. § 2254 for a writ of habeas corpus [Doc. 1] is **DENIED** without an evidentiary hearing.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability because petitioner has not made a substantial showing of the denial of federal constitutional right.

**IT IS FINALLY ORDERED** that all of petitioner's other pending motions are **DENIED** as moot.


So ordered this 28th day of July, 2023.


_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE